UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ENRIQUE SANCHEZ-GONZALEZ,<br><br>    Defendant. | Criminal Case No. 11-CR-1758-L<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT<br><br>[Doc. No. 23] |

Defendant is charged in a three-count superseding indictment with: (1) attempting to enter the United States after deportation in violation of 8 U.S.C. § 1326(a) and (b); (2) fraud and misuse of entry documents in violation of 18 U.S.C. § 1546(a); and (3) aggravated identity theft in violation of 18 U.S.C. § 1028A. Currently before the Court is Defendant's Motion to Dismiss Count One of the Indictment on the basis that his prior deportation was invalid.

I.  **Background**

Defendant first entered the United States in 1975, and he became a legal permanent resident in 1989. On September 24, 2004, the Department of Homeland Security issued Defendant a Notice to Appear ("NTA") that alleged that he had a July 22, 1999 conviction for conspiracy to sell and transport methamphetamine in violation of California Penal Code §

182(a)(1) and California Health & Safety Code § 11379(a). (Def. Ex. A.) The NTA charged Defendant with being subject to removal on two grounds: first, that he had been convicted of an "aggravated felony," and second, that he had been convicted of a "controlled substance offense." (Def. Ex. A.)

On October 7, 2004, Defendant appeared before an Immigration Judge ("IJ"). At the beginning of the hearing, the IJ explained the removal hearing process and advised Defendant of his rights. Then the IJ informed Defendant of the charges against him:

> IJ: Sir, in your case the government alleges that you are not a citizen or national of the United States, that you're a citizen and native of Mexico. They allege that you've been a lawful permanent resident since April 14, 1998, through El Paso, Texas. They allege that you were convicted July 22, 1999 in the Superior Court of California, County of Los Angeles for conspiracy for sale and transportation of methamphetamine in violation of section 182(a), 11379(a) of the California codes. And they allege that you were sentenced to confinement for thirteen years for the conviction. Understand those allegations?
> Def: Yes.

(Def. Ex. B, at 5:26-28 and 6:1-4.)

Next, the IJ confirmed that Defendant wished to give up his right to represented by counsel and go forward with the hearing. At that point, the IJ began questioning Defendant:

> IJ: Very well. Are you a citizen or national of the United States?
> Def: No.
> IJ: Are you a native and citizen of Mexico?
> Def: Yes.
> IJ: Are either of your parents a United States citizen?
> Def: No.
> IJ: Have you been a lawful permanent resident since April 14, 1998?
> Def: Yes.
> IJ: Were you convicted July 22, 1999, in the Superior Court of California, County of Los Angeles, for conspiracy to sell and transport methamphetamine?
> Def: Yes.
> IJ: Were you sentenced to confinement for a period of thirteen years?
> Def: Yes.
> IJ: Did you file an appeal of your conviction in the Criminal Court of Appeal?
> Def: No, I lost it, I lost.
> IJ: You filed an appeal but the conviction was upheld?
> Def: No, what happened was that the attorney who took my case was not properly licensed to practice.
> IJ: Okay. Did you ever file an appeal with the Court of Appeal challenging that conviction?
> Def: No.
> IJ: Sir, if I have to order you removed, what country do you wish to be removed to?
> Def: To my country.
> IJ: Would that be Mexico?
> Def: Yes.

```
. . .
IJ:   Sir, is it okay if I look at your conviction record to see, uh, whether your
      conviction meets the definition of an aggravated felony or not?
Def:  Correct.
IJ:   Okay. [Pause] Okay, sir, I'll mark this document into evidence as Exhibit
      number two. I've reviewed the charging document and the overt acts, and it
      meets the definition. Understand?
Def:  Yes.
```

(Def. Ex. B, at 6:17-28 to 7:1-19.)

The IJ subsequently found Defendant removable "as charged" and found he was not eligible for any form of relief from deportation. Therefore Defendant was ordered deported from the United States.

## II.  Defendant's Claims

Defendant argues that the deportation is invalid because the IJ relied on insufficient evidence to find that his § 11379(a) conviction rendered him deportable as a controlled substance offense.[1] Specifically, Defendant contends that the Government did not meet its burden of proving that he was removable because the charging document alone was insufficient to establish that he was convicted of a controlled substance offense, and his statements at the hearing could not establish removability. Therefore, Defendant asserts that he was not removable as charged, and thus he suffered prejudice.

## III.  Legal Standards

A defendant in a § 1326 prosecution "has a Fifth Amendment right to collaterally attack a removal order because the removal order serves a predicate element of his conviction." *United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1047 (9th Cir. 2004). To succeed in a collateral challenge to a removal order, a defendant must demonstrate: "(1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was

---

[1] The Government does not dispute, and appears to have conceded, that Defendant's § 11379(a) conviction was not an aggravated felony, thus his removal on the first ground was erroneous. However, the Government argues Defendant's removal on the second ground was proper. Either basis would have been sufficient for the IJ to find Defendant removable. Therefore, the Court will only address whether Defendant was properly removed for having been convicted of a controlled substance offense.

3

fundamentally unfair." *Id.* An underlying removal order is "fundamentally unfair" when: (1) the defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. *Id.*

When the government charges a legal permanent resident with being deportable, it bears the burden to "prove by 'clear, unequivocal, and convincing evidence that the facts alleged as grounds of [removability] are true.'" *Ruiz Vidal v. Gonzalez*, 473 F.3d 1072, 1076 (9th Cir. 2007). And if the alien is charged with removability on the basis of a conviction under § 11379(a) of the California Health and Safety Code, the government must prove that the substance underlying the conviction is one that is covered by Section 102 of the Controlled Substances Act. *Id.* at 1076-77 (explaining that § 11379(a) is categorically overbroad because not all substances prohibited by California law are "controlled substances" under federal law). Therefore, an IJ must apply the modified categorical approach to determine if the alien is removable as charged. *Id.* at 1078.

The inquiry under the modified categorical approach is limited to a "narrow, specified set of documents that are part of the record of conviction." *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004). The documents include: the charging document (in conjunction with a signed plea agreement), the judgment of conviction, the minute order fully documenting the judgment, jury instructions, a signed guilty plea, and the transcript from the plea proceedings. *Id.*; *Ruiz Vidal*, 473 F.3d at 1078. A charging document alone can never establish that the crime charged and the crime of conviction are one and the same. *United States v. Kelly*, 422 F.3d 889, 895 (9th Cir. 2005).

**IV.    Discussion**

The central issue raised in the instant motion is: whether the IJ relied on sufficient evidence to find that Defendant was removable for having been convicted of a controlled substance offense. The parties do not dispute that Defendant's conviction statute, California Health and Safety Code §11379(a), is categorically overbroad and that the modified categorical approach applies. The parties also do not dispute that the charging document, by

itself, is insufficient to satisfy the modified categorical approach. Further, the parties do not dispute that Defendant admitted at the hearing that his conviction did involve methamphetamine. The question, therefore, is whether, and to what extent, Defendant's admission can be considered as proof of his charge of removability.

A.      Relevant Ninth Circuit Case Law

The Ninth Circuit has issued three opinions relevant to the question before the Court.

1.      *Cheuk Fung S-Yong v. Holder*

The first case is *Cheuk Fung S-Yong v. Holder*, 600 F.3d 1028 (9th Cir. 2010). In *S-Yong*, the Ninth Circuit held that immigration judges may not rely on an alien's admissions, alone, to find the alien removable. In *S-Yong*, the government charged the alien with being removable on the ground that his conviction for §11379(a) qualified as a controlled substance offense. *Id.* at 1030. However, the NTA did not specify the controlled substance. *Id.* at 1031.

At the removal hearing, the IJ asked the alien about the charges in the NTA, and asked him whether he had been convicted of the §11379 charge alleged in the notice. *Id.* The alien confirmed that he had been. *Id.* Then the IJ asked to look at the government's "conviction document," that purportedly showed the alien's conviction involved MDMA (or ecstasy). *Id.* The IJ never identified the conviction document, nor did he enter it into evidence. *Id.* at 1032. However, the alien conceded the accuracy of the description of his offense in the document. *Id.* at 1031. Based on the "unidentified 'conviction document,'" and on the alien's admission that the substance was MDMA, the IJ found the alien removable. *Id.* at 1032.

The Ninth Circuit reversed, and held that there was insufficient documentation to sustain the order of removal. The Court explained that the administrative record did not contain any documents at all, and that it was impossible to tell whether the unidentified conviction document established with certainty that the alien's conviction was a controlled substance offense. *Id.* at 1035. The Ninth Circuit also held that an alien's admissions, alone, cannot constitute clear, convincing evidence of removability. *Id.* at 1035-36.

2.     *Perez-Mejia v. Holder*

The second case is *Perez-Mejia v. Holder*, 641 F.3d 1143 (9th Cir. April 21, 2011). In *Perez-Mejia*, the Ninth Circuit held that immigration judges can rely on an alien's admissions to find removability, if the admissions are made at the 'pleading stage' of the removal hearing. In *Perez-Mejia*, the alien was also charged with being removable for a controlled substance offense. *Id.* at 1145. At the outset of the removal hearing, the alien's attorney admitted to the factual allegations in the NTA, including an allegation that expressly stated the alien's crime involved cocaine. *Id.* at 1146. His attorney also conceded removability. *Id.* The Ninth Circuit held there was sufficient evidence to sustain the order of removal based solely on the alien's admissions.

The *Perez-Mejia* court explained that removal proceedings are conducted pursuant to 8 C.F.R. § 1240.10. *Id.* at 1149. That regulation defines two different stages of a removal hearing: the 'pleading stage' and the 'evidentiary stage.' *Id.* The 'pleading stage' occurs after the IJ advises the alien of his rights and places him under oath. *Id.* at 1149-50. Then the alien is required "to plead to the notice to appear by stating whether he or she admits or denies the factual allegations and his or her removability under the charges contained therein." *Id.* (quoting 8 C.F.R. § 1240.10(c)). The Ninth Circuit stated that an alien's admissions to facts alleged in the NTA, made during this 'pleading stage' "are binding just as admissions made by a defendant in an answer to civil complaint are binding in a judicial proceeding." *Id.* at 1149. The Court further explained that "if the alien admits the allegations and removability, 'and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established by the admissions of the respondent.'" *Id.* at 1150.

If, however, material issues remain in dispute, or the IJ is not satisfied that the alien's admissions or concessions resolve all the issues, the hearing enters the 'evidenttiary stage.' *Id.* During this stage the IJ receives admissible evidence on any issue not resolved at the 'pleading stage.' *Id.* Unlike the 'pleading stage,' an alien's admissions during the 'evidentiary stage' cannot be considered. *Id.* at 1149 ("the evidence that the IJ may consider

6

in deciding whether the alien's prior conviction render him removable is limited to certain documents. . . . any admissions and other statements made by the alien after the §1240.10(c) pleading stage may not be considered").

Based on this framework, the Ninth Circuit found that the NTA in *Perez-Mejia* expressly stated the alien was convicted of possessing cocaine for sale, and that the alien's attorney admitted the allegation during the 'pleading stage.' *Id.* at 1154. The Court held that admission was binding and "relieved the government of the obligation to present any evidence on the factual question of the nature of the drug offense." *Id.*

### 3. *Pagayon v. Holder*

The final case is *Pagayon v. Holder*, 642 F.3d 1226 (9th Cir. June 24, 2011). In *Pagayon*, the Ninth Circuit held that immigration judges may consider an alien's admissions, but only if they are corroborated by the narrow set of documents that can be considered under the modified categorical approach. *Pagayon* dealt with another alien who was found removable based on a controlled substance offense. *Id.* at 1230. At the hearing in *Pagayon*, the government introduced a charging document that listed the controlled substance as methamphetamine, and an abstract of judgment showing the conviction was for the charged statute, but it did not specify the type of drug. *Id.* During the course of the hearing, the IJ asked the alien: "Are these your convictions?" To which, the alien responded "Yes, your honor." *Id.* On that record, the IJ found the alien was removable as charged. *Id.* at 1231.

The Ninth Circuit found the modified categorical approach was satisfied. The Court explained that the documents were not enough to establish the fact of a controlled substance conviction: "something else must connect the two, such as a reference to the charging document in the record of conviction." *Id.* at 1233. But the Court noted that "[i]n principle, there is no reason why an alien could not admit to the necessary connection between a charging document and a conviction." *Id.* Therefore, the Ninth Circuit created a limited exception to *S-Yong*'s rule against the use of an alien's statements. The Court held: "We therefore make explicit what *Cheuk Fung S-Yong* suggests: An IJ may consider an alien's

7

admissions of removability if they are corroborated by the 'narrow, specified set of documents that are part of the record of conviction.'" *Id.* at 1234.

In upholding the IJ's order of removal, the Ninth Circuit reasoned that the IJ did not rely solely on the alien's admission. *Id.* The Court stated "[t]he abstract of judgment established the crime of conviction, while the information established that the drug charge was for possession of methamphetamine. [The alien's] admission was needed only to confirm that the conviction was for the charged crime." *Id.*

B. <u>Analysis</u>

1. <u>*S-Yong*, *Perez-Mejia*, and *Pagayon* are Consistent</u>

The Government argues that *Perez-Mejia* resolves the dispute and controls the outcome of this case. Defendant counters that *Perez-Mejia* is in conflict with *S-Yong* and *Pagayon*. Defendant urges the Court to either: 1) find *S-Yong* and *Pagayon* control, and not follow *Perez-Mejia*; or 2) harmonize the opinions on the narrowest ground possible.[2]

At first blush, the cases appear to be in conflict. However, upon closer review, the Court finds they are not inconsistent. Although *S-Yong* and *Pagayon* do not reference 8 C.F.R. § 1240.10, and do not use the terms 'pleading stage' and 'evidentiary stage,' the facts of the cases show that they are consistent with the regulation, and can be squared with *Perez-Mejia*.

To start, *S-Yong* is consistent with *Perez-Mejia*. In *S-Yong*, the alien admitted at the pleading stage that the charge in his NTA was accurate. *S-Yong*, 624 f.3d at 1031. However, unlike *Perez-Mejia*, his admission alone did not establish removability because the notice to appear did not specify the type of drug. *See Perez-Mejia*, 641 F.3d at 1153 (distinguishing *S-Yong* on this ground). Therefore, the hearing necessarily proceeded to the evidentiary stage. *Id.* And it was at the evidentiary stage that the alien admitted that his conviction involved MDMA. But the IJ was not permitted to rely on his admission, because as *Perez-Mejia* later explained, admissions made during the evidentiary stage cannot be considered since they are

---

[2] Defendant proposes the following rule be adopted: "[A]n IJ may not rely upon a respondent's statements except when those statements (1) provide the link between a charging document and a document of conviction, and (2) are made during the 'pleading stage.'" (Def. Sur-Reply, at 8-9.)

8

not part of the narrow set of documents that can be considered under the modified categorical approach. *See id.* at 1154-55; *S-Yong*, 600 F.3d at 1035.

*Pagayon* is also consistent with *Perez-Mejia*. The factual recitation in *Pagayon* does not mention the pleading stage of the removal hearing.[3] However, based on the facts set out in the opinion, it appears that the hearing had entered the evidentiary stage and that the IJ was applying the modified categorical approach to determine if the alien was removable when the alien made his admission. For example, the case discusses how the government had introduced an abstract of judgment and two informations, and how the IJ summarized the documents, provided copies to the alien, and asked the alien if they were his convictions. *Pagayon*, 632 F.3d at 1230. Clearly, the IJ had proceeded beyond asking whether the alien admitted the factual allegations in the notice to appear. The IJ had begun an evidence gathering inquiry. Therefore, in *Pagayon*, the alien's admission occurred during the evidentiary stage. Yet, the Ninth Circuit held the IJ *could* consider the admission – which is ostensibly in conflict with *Perez-Mejia*'s rule that admissions at the evidentiary stage cannot be used.

However, *Pagayon* is not actually in conflict with *Perez-Mejia*. Rather, *Pagayon* created a limited exception that allows an IJ to consider an alien's statements during the evidentiary stage. In *Pagayon*, the Ninth Circuit explained that an alien's admissions may be considered, if they are simply confirming the admissible documents, and not substituting for them. *See Pagayon*, 642 F.3d at 1234. Thus *Pagayon*'s rule allowing the IJ to consider an alien's admissions in this limited context is consistent with *Perez-Mejia*. *See e.g. Perez-Mejia*, at 1154 (explaining that "[i]f the issue concerning removability being addressed at [the evidentiary] stage requires applying the modified categorical approach, the IJ . . . may not consider any further statements made by the alien *unless they are contained in admissible*

---

[3] Even assuming the IJ conducted a pleading stage, the fact that the IJ proceeded to examine the alien's conviction record and discuss it with him, indicates that the hearing had moved to the evidentiary stage. *Cf. Perez-Mejia*, 641 F.3d at 1154-55 (stating the hearing in that case did not move to the evidentiary stage even though the IJ received a record of conviction because "the IJ admitted the record of conviction without further discussion and promptly asked whether [the alien] wanted to designate a country to which to be deported. . . . This order of inquiry confirms that the IJ was satisfied that Perez-Mejia's admissions and concessions obviated the need to take evidence pursuant to § 1240.10(d).").

9

*documents*" and noting that the modified categorical approach "does not permit considering statements from an alien unless included in the narrow set of documents that are part of the record of conviction") (emphasis added).

Therefore, the Court finds *Perez-Mejia* can be squared with *S-Yong* and *Pagayon*, and the cases, taken together, give the Court a framework to resolve the instant motion. In sum, an alien's admissions alone may by used to establish removability, but only if they are made at the pleading stage, and only if the admission to the charges in the NTA establish all of the facts necessary to determine the alien was removable. Once the removal hearing proceeds to the evidentiary stage, an alien's admissions alone cannot be used to find removability. However, an alien's admissions may be considered at the evidentiary stage if they are corroborated by the narrow, specified set of documents that are part of the record of conviction.

    2.  <u>The IJ Erred in Relying on Defendant's Admission to Find Him Removable</u>

Turning to the facts of this case, the Court must first determine whether Defendant's statements were made at the pleading stage or the evidentiary stage of his removal hearing. The Court finds that his admission came during the evidentiary stage.

As an initial note, the Court agrees with Defendant that it is not clear that the IJ actually conducted a complete pleading stage. Under § 1240.10(c) the pleading stage has two components: 1) a factual admission and 2) a concession of removability. 8 C.F.R. § 1240.10(c) ("The immigration judge shall require the respondent to plead to the notice to appear by stating whether he or she admits or denies the factual allegations *and* his or her removability under the charges contained therein.") (emphasis added). Here, the IJ started to ask Defendant about the allegations in the NTA, but he never asked whether Defendant conceded removability. Also, the IJ did not tell Defendant that he was taking a pleading from him. *Cf. Perez-Mejia*, 641 F.3d at 1146 (noting that the IJ asked if the alien's attorney was "ready to go forward *with pleadings*?" and then proceeding to specifically ask "how do you pleads [sic] to the four allegations and the one charge of removability?" ) and *S-Yong*, 600 F.3d 1028 (noting that after the alien elected to proceed without counsel, and before the

IJ questioned him about the charges in the NTA, the IJ "indicated that he would take a 'pleading' from [the alien] and determine what issues would be raised in the case").

But even assuming there was a pleading stage, the Court finds that when the IJ asked Defendant about his conviction, the hearing had already entered the evidentiary stage. Once the IJ starts to delve into facts beyond what is alleged in the NTA, the pleading stage ends and the evidentiary stage begins. *See Perez-Mejia*, 641 F.3d at 1149.

Here, the IJ started out asking Defendant questions that tracked the allegations in the NTA. (Def. Ex. B, at 4:17, 19 ("Are you a citizen or national of the United States?" and "Are you a native and citizen of Mexico?").) But then the IJ diverged from the allegations in the NTA and asked "Are either of your parents a United States citizen?" (Def. Ex. B, at 4:21.) The NTA did not contain any factual allegation regarding the Defendant's parents. Therefore, this inquiry went beyond confirming whether Defendant admitted or denied the allegations in the NTA.[4] The question went to the facts underlying the allegations.[5] Accordingly, the Court finds that the pleading stage ended at that point, and the hearing moved to the evidentiary stage.[6]

Subsequently, the IJ asked Defendant: "Were you convicted July 22, 1999, in the Superior Court of California, City of Los Angeles, for conspiracy to sell and transport methamphetamine?" Defendant answered "Yes." (Def. Ex. B, at 6:25-27.) However, because the hearing had entered the evidentiary stage, Defendant's admission, alone, could not be used to find him removable. *Perez-Mejia*, 641 F.3d at 1149.

The question therefore turns to whether Defendant's admission could be considered under *Pagayon*. The Court finds that it could not. According to *Pagayon*, the IJ could only rely on Defendant's admission if it was corroborated by the narrow set of documents that can

---

[4] In addition to asking the Defendant about his parents, the IJ also asked a series of follow-up questions about whether he appealed his conviction. (Def. Ex. B, at 7:2-6.) These questions similarly went beyond the allegations in the NTA and further indicate that the IJ was not taking a pleading, but was engaging in evidence-gathering.

[5] Presumably the IJ was gathering evidence to satisfy himself that Defendant was a Mexican citizen and not a United States citizen through derivative citizenship.

[6] The transition from the pleading stage to the evidentiary stage does not have to be formal. The transition occurs once the IJ starts to develop facts beyond those alleged in the NTA. *See e.g. Perez-Mejia*, 641 F.3d at 1152-52 (explaining that the hearing in *S-Yong* entered the evidentiary stage when the IJ reviewed the unidentified conviction document and asked the alien questions that led to his admission that his offense involved MDMA).

11

1  be considered under the modified categorical approach. *Pagayon*, 642 F.3d at 1234. Here,
2  the IJ had only one document before him – the charging document accusing Defendant of
3  conspiracy to commit a controlled substance offense involving methamphetamine. The IJ
4  did not have any other reliable documents of conviction, such as an abstract of judgment, to
5  establish the crime of conviction or to corroborate the Defendant's admission. The evidence
6  of conviction came solely from Defendant's admission. But under *S-Yong* and *Pagayon*, an
7  alien's admission cannot be used in place of the narrow set of judicially noticeable
8  documents.
9        This case is therefore distinguishable from *Pagayon* because in *Pagayon* the record
10 included both a charging document *and* a conviction record, and the alien's admission was
11 only used to link the two. *Id.* at 1234. In contrast, the admission here was used as a
12 substitute for, rather than to corroborate, the missing conviction documents.
13       Therefore, the Court finds that the IJ ordered Defendant removed based on insufficient
14 evidence, and in so doing violated Defendant's Due Process rights. Further, because
15 Defendant was found removable when he should not have been, he suffered prejudice. *See*
16 *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006) (holding removal order
17 "clearly prejudiced" the alien because he was removed when he should not have been).
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## VI. Conclusion

Based on the foregoing, the Court finds that the underlying removal order was fundamentally unfair. Accordingly, Defendant has met all the requirements for a successful collateral attack on his underlying deportation.[7] Therefore, Defendant's Motion to Dismiss Count One of the Indictment is GRANTED.

IT IS SO ORDERED.

DATED: August 26, 2011

M. James Lorenz
United States District Court Judge

---

[7] Because the IJ erred in finding Defendant removable based on the record, and erred in telling Defendant he was not eligible for any form of relief, Defendant is excused from the exhaustion requirement and was deprived of a meaningful opportunity for judicial review. *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006).